application to the court for leave to do so, and upon good cause shown ; in addition to the payment of the costs of the contempt.

The defendant, however, cannot purge his contempt for not answering, in any stage of the proceedings, after an attachment has been issued, by putting in a demurrer to the whole or any part of the bill. He must, therefore, even upon a common attachment, either plead to or answer the whole bill ; unless the court, upon special motion for that purpose, shall see fit to give him leave to demur. ( *Viger* v. *Lord Audley*, 2 *My. & Craig. Rep.* 49.) Here the defendant had a right to plead, upon payment of the costs of his contempt ; and the acceptance of the plea would not have been any waiver of the proceedings for the contempt, in case the costs had not been paid pursuant to the offer. ( *Woodward* v. *Tremaine*, 9 *Sim. Rep.* 301.)

The application, therefore, to take the plea off the files must be denied ; and the application to discharge the defendant from the attachment must be granted, upon his paying to the complainant his taxable costs of the proceedings for the contempt, up to the time of the offer to pay the same which was made by the defendant's solicitor. Such costs must be paid within ten days after service of the taxed bill.

1843.

Dias
v.
Bouchaud.

---

DIAS and others *vs.* BOUCHAUD, executor, &c. and THE
UNITED STATES.

Where C. & H. who were copartners in trade, became insolvent, and assigned all the property of the partnership and all their individual property to an assignee in trust to pay to himself in the first place certain debts due to him from the copartnership ; and secondly, to pay two notes on which he was liable as endorser for the firm, and certain custom house bonds which he had signed with C. as surety, for duties upon goods imported for the firm, including three bonds which D. had also signed as a co-surety with the assignee ; and lastly, in trust to re-assign the surplus of the assigned property, if any, to the assignors, or to hold it upon such trusts as they should appoint ; and in addition to the debts provided for in the assignment, C. was indebted to the United States, at the time of such assignment, upon seventeen other bonds for duties, fourteen of which bonds were

1843.

Dias
v.
Bouchaud.

signed by C. as principal, and by T. as his surety, and three were signed by T. as principal and by C. as surety; and C. & H. were also indebted to the United States upon three other bonds for duties, signed by C. as principal and by F. as surety; and D. and F. subsequently paid to the United States the moneys due on the bonds signed by them respectively as sureties; and certain of the goods, which had been placed in the public store house under a special permit, were purchased while there, by N. who gave his notes for the same to the vendors, including the duties thereon; and the collector, after having received bonds with sureties for the payment of the duties on such goods according to law sold a part of such goods for the payment of the duties; and the assignee of C. and H. died and appointed B. his executor; and a bill was filed by D., F. and N. against the executor of the assignee, claiming a priority in payment out of the assigned property, and charging the assignee and his executor with misapplications of the fund; *Held,* that the assignment of C. & H. must be deemed an assignment of all the property of the assignors, so as to bring it within the acts of congress giving to the United States a preference in payment, of bonds for duties, over the general creditors of the assignors, although no debts were provided for in the assignment, except those which were due to the assignee, or debts for which the assignee was liable with others.

*Held further*, that the insolvency and the general assignment of C. & H. gave to the United States a right to priority in payment for all the debts of the latter, out of the assigned fund; which priority attached upon the fund at the time of the assignment, and that D. and F. respectively having afterwards paid to the United States the moneys due on the bonds for duties which they had signed as sureties, they were subrogated to the rights of the United States as against the assignee of the fund, and became entitled in equity to their rateable proportion of such fund.

*Held also*, that neither the assignee nor his personal representative could object to the priority of the United States, upon the ground that the assignment was fraudulent as against the other creditors of the assignors.

*Held further*, that if the assignee and his executor had notice of the several bonds to the United States, and of the parties to the same, they had legal notice of the rights of the sureties in such bonds to substitution, in case such bonds should not be paid to the United States, out of the fund as to which the preference was given.

*Held further*, that N. was not entitled to a preference in payment out of the assigned fund, under the act of congress, or even to a subrogation to any rights of the United States at common law; that as soon as the collector received the bonds with sureties, as required by law, for the duties upon the goods deposited under the special permit, the lien of the United States upon such goods, for the duties thereon, ceased, and the collector had no authority to sell any part of the goods to pay such duties; and that N. acquired no lien either at law or in equity upon the assigned fund by this unauthorized act of the collector.

*Also Held*, that the assignors or their representatives were necessary parties to the suit, against the executor of the assignee for an account, as they had a common or connected interest with the complainants in taking the account of the application of the assigned property; but that, as the defendant had

not taken the objection that the assignors had not been made parties, either by his demurrer upon the record or ore tenus at the hearing, it could not be taken upon the appeal from the order overruling the demurrer.

Where a bill is filed by the sureties in a custom house bond which has been paid by them, to be substituted in the place of the obligees in such bond, and to settle their rights to a priority of payment out of the estate of the principal debtor, all persons standing in the like situation with the complainants should be made parties to the suit; or the bill should be filed in behalf of the complainants and of all others who were sureties in bonds given by the principal debtor for duties, and who had paid such bonds so as to be entitled to be subrogated to the rights and remedies of the United States against the assigned fund.

In a demurrer to a bill for want of parties, the defendant must point out the necessary parties, either by name, in reference to some statement of their names in the bill, or by their characters, as the heirs, devisees, personal representatives, assignees, creditors, &c. of some of the persons named or referred to in such bill.

In a suit against the personal representatives of a deceased debtor, to recover a debt due from his estate, it is only necessary for the complainant to file the bill in behalf of himself and of all other creditors standing in the same situation, when it appears upon the face of the bill that there will be a deficiency in the fund, and that there are other creditors who are entitled to a rateable proportion with the complainants.

Such an allegation in the bill is not necessary, to enable the court to make a general decree for the benefit of all the creditors, where the answer of the defendant shows that the estate is insolvent and that there are other creditors who have an interest in the fund.

But this principle only applies to a bill filed by a single creditor, or by several creditors for a debt due to all of them jointly. For several creditors, having distinct debts against the estate, cannot file a bill for their respective debts, without making all other creditors having a common interest with them parties to the suit, or stating in the bill that it is filed in behalf of themselves and of the other creditors having a common interest with them.

Where a claim is made against the personal estate of the decedent, which is adverse to the rights and interests of his general creditors, it is only necessary to make the personal representative a party; and it is the duty of such representative to defend the estate in his hands against such claims.

A person may be a necessary party, within the meaning of the rule requiring all persons interested to be made parties, although the proper decree can be made, as to the subject matter of the litigation, in his absence, in case the defendant makes no objection on that ground.

Where the defendant neglects to make the objection, by plea, answer or demurrer, of the want of parties who are only necessary to protect him from further litigation, the court, in its discretion, may refuse to sustain the objection, at the hearing, or to require the complainant to add new parties in that stage of the suit.

Upon a general demurrer to a bill filed by several complainants, for want of equity, the demurrer must be allowed unless it appears that all the complainants have an interest in the subject matter of the litigation.

The ten years' limitation of suits in equity, where there is no concurrent rem-

1843.

Dias
v.
Bouchaud.

edy at law, does not begin to run against a surety until the payment of the money by him for his principal.

The words "voluntary assignment" in the 65th section of the act of congress of 1799, as well as in the corresponding section of the act of March 1797, creating priorities in favor of the United States, means an assignment in trust, of all the debtor's property, to pay debts; as contradistinguished from a mere sale of the property to a creditor in payment of his debt, or the pledge or hypothecation of the property, to a particular creditor, as a mere security for a debt, in the nature of a mortgage.

November 21.

THIS was an appeal by the defendant Bouchaud, executor of L. A. Brunel deceased, from a decretal order of the vice chancellor of the first circuit, overruling the demurrer to the bill of the complainants. In April, 1823, Castro & Henriques, who were copartners in trade as importing merchants in New-York, became insolvent. And in May thereafter Castro, for himself and as the attorney of Henriques, assigned all the property of the partnership, and all the individual property of himself and Henriques respectively, to Brunel, in trust to pay himself, in the first place, certain debts due to him from the copartnership; secondly, to pay two notes on which he was liable as endorser for the firm, and certain custom-house bonds which he had signed with Castro, as surety, for the duties upon goods imported for the firm, including three bonds which the complainant J. L. Dias had also signed as a co-surety; and lastly, in trust to re-assign the surplus of the assigned property, if any, to the assignors, or to hold it upon such trusts as they should appoint. In addition to the debts provided for in the assignment, $30,626 of which were for such bonds, and $6873 for the other debts, Castro was indebted to the United States, at the time of such assignment, upon seventeen other bonds, for duties, fourteen of which, amounting to $6886, were signed by Castro as principal, and by G. Thiolliere as his surety; and the other three were signed by Thiolliere as principal, and by Castro as surety, and amounted to $1910; all of which seventeen bonds remained due and unpaid at the time of filing the bill in this cause. Castro & Henriques were also indebted to the United States, at the time of the assignment, upon three other bonds for duties,

amounting to $3459, signed by Castro as principal, and by J. Furman, one of the complainants, as surety; upon which judgments were afterwards recovered against Furman, and he was compelled to pay the same with interest and costs. In addition to these bonds, Castro, at the time of the assignment, was indebted to the United States in the sum of $1116, upon three other bonds, signed by him as principal and by Thiolliere as surety, for the duties upon one parcel of the brandies sold to E. H. Nicoll as hereafter mentioned. All the bonds provided for in the assignment, except one of $1027, signed by Castro and Brunel, and three signed by Castro as principal and by Brunel and Thiolliere as sureties, which were given for the duties upon the other parcel of the brandies hereafter mentioned, amounting to $4545, and a part of two of the bonds signed by Castro as principal and by Brunel and Dias as sureties, were afterwards paid; probably by Brunel. And the balance due upon the two bonds upon which Dias was liable as one of the sureties, amounting to $1000, was paid by Dias to the United States, in November, 1834. Brunel died in July, 1833, and by his will appointed the defendant Bouchaud and another person executors thereof; but Bouchaud alone took out letters testamentary thereon.

The bill in this cause was filed in January, 1841, by Dias, Furman, F. H. Nicoll and R. Smith, against Bouchaud, as executor of Brunel, and against the United States, as defendants therein. And the complainants, in addition to the facts before stated, averred and charged, upon information and belief, that the amount of the property of Castro & Henriques which came into the hands of Brunel under the assignment, was not less than $80,000; and that a large amount of such property remained in his possession at the time of his death; that Bouchaud, as his executor, received a large amount of property which was in the possession of and under the control of Brunel at the time of his death, including the property which was in Brunel's hands under the assignment, and which Bouchaud had not applied to pay the debts of Castro & Henriques

VOL. X.                          57

according to law ; that Bouchaud, after taking possession of such estate and effects, gave out and pretended that Brunel died insolvent, notwithstanding which Bouchaud paid to several of the simple contract creditors of Brunel the amount of their demands without regard to the priority of the United States, under and by virtue of the several bonds executed by Brunel, and with the knowledge of the same, without making any distinction between the funds and property held by Brunel as such assignee, and those held in his own right ; and that the whole of the funds and property received by Bouchaud as executor were mingled with his individual funds. And the complainants charged and insisted that the defendant Bouchaud was personally liable, to the extent of the assets received by him of the estate and property in the possession or under the control of Brunel at his death, not only for the proper debts of the latter, but also for the debts of Castro & Henriques, which Brunel in his lifetime had neglected to pay.

It was also stated and charged in the bill, that two parcels of brandy imported by Castro & Henriques, in March, 1823, for the duties upon which six of the before mentioned bonds were given, were placed in the public store, under a special permit, and while there were purchased by E. H. Nicoll, who was doing business in the name or firm of Smith & Nicoll, and who gave the notes of his firm therefor, including the amount due for the duties which were secured by the six bonds ; and that after the brandy had thus been purchased and paid for, E. H. Nicoll presented the special permit at the custom house and demanded a delivery of the brandy, but the collector refused to deliver it, alleging that the permit was surreptitiously obtained, and that Castro & Henriques having become insolvent, the brandy could not be delivered without additional security ; that Brunel, although he had at that time in his possession and under his control a large amount of the property of Castro, did not pay the bonds ; and that the brandy remained in the public store until the expiration of the year from the time of importation, when the collector sold sufficient of the

brandy to pay the duties. And the complainants Smith &
Nicholl, who had subsequently become the general assignees
of E. H. Nicoll, insisted that as a part of the brandy thus pur-
chased by him was sold to pay those duties, they were in
equity to be considered as sureties, and were entitled to the
same rights as if they had executed the bonds for the duties
with Castro, and ought to be substituted in the place of the
United States in relation to the same; and that Brunel having
neglected to pay such duties to the United States, out of
the assigned property, according to the priority established
by law, his estate was liable for such duties.

The complainants in their bill admitted that the debts
still due to the United States, upon the bonds signed by
Castro, either as principal or surety, were in common with
the said claims of the several complainants for the amounts
paid by them for such duties, entitled to a priority in pay-
ment, out of the estate of Brunel, and were also entitled to
priority over the other creditors out of the estate of Castro;
and that if there was not sufficient of the assigned property,
in the hands of Brunel at the time of his decease.to dis-
charge such debts and claims, then that the proper estate
of Brunel which came to the hands of the defendant
Bouchaud as his executor, was answerable for the defi-
ciency, in consequence of the misapplication of the assign-
ed fund by Brunel; which deficiency was entitled to pri-
ority in payment over debts due to other creditors of Bru-
nel, in case there was not enough of such estate to pay
the whole. And they charged and insisted that they were
respectively entitled, in common with the United States,
and upon the same principles, to a priority in payment for
so much of the bonds as had been paid by Dias and Furman
and for the amount in the duties thus paid by Nicoll; and
in case of a deficiency of the estate of Brunel to pay the
full amount of debts entitled to such priority, that they
were entitled to be paid pro rata with the United States.
The complainants also charged in their bill that before the
letters testamentary were granted to Bouchaud, he well knew
the whole amount of the indebtedness of the estate of Brunel
to the United States, and that Brunel had a large amount

of the assigned property, and that a large amount of the custom house bonds of Castro remained unpaid. And they prayed for a full discovery as to the assigned property, and how it had been disposed of and applied, and of the property of Brunel which came to the hands of his executor, and of the application thereof; and that they might be paid the amount of their claims, with interest, from the estate of Brunel, if there should be sufficient for that purpose, and if not, then out of the proper goods and effects of the defendant Bouchaud; and that they might have such further, or such other relief, as should be agreeable to equity.

The defendant Bouchaud put in a general demurrer to the bill, for want of equity. And he also assigned as a special cause of demurrer that the complainants had not made all the persons, who were interested in the matters of the bill, parties thereto, and who by the showing of the complainants were necessary and proper parties. But the demurrer did not state what persons, or what description or class of persons, should have been brought before the court as such parties.

*L. H. Sandford,* for the appellant. The bill is not exhibited by or on behalf of all the creditors of Castro & Henriques, nor of all the creditors of Brunel. This appears on the face of the bill and shows a want of proper parties. (*Cunningham* v. *Pell,* 5 *Paige,* 607, 613. *Story's Eq. Pl.* p. 99. *Id.* 191, 2, § 216. *Willis' Pl.* 220. *Hallett* v. *Hallett,* 2 *Paige,* 19. *Fish* v. *Howland,* 1 *Id.* 20. *Wakeman* v. *Grover,* 4 *Id.* 22, 23. *Innis* v. *Lansing,* 7 *Id.* 583. *Thompson* v. *Brown,* 4 *John. Ch.* 619.) It appears sufficiently upon the bill itself that there are other creditors. The fact that the claims of the complainants were originally debts due to the United States, does not constitute them liens on the assigned fund. (*United States* v. *Fisher,* 2 *Cranch,* 358. *The same* v. *Hove, Idem,* 90. *Breastin* v. *Farmers Bank of Delaware,* 12 *Peters,* 102.) Nor does that circumstance, in this case, give the complainants any priority, or any right to sue without bringing in all the

creditors. No case is stated showing that the United States ever acquired any right of priority in payment out of the property of Castro & Henriques. (*See United States* v. *Shelton,* 1 *Brock. C. C.* 507.) As against the defendant Bouchaud and the estate of Brunel, the complainants show no right to charge the former, or the estate of the latter, with the alleged devastavit; because it is not averred that Bouchaud had notice of the debts due to the United States, or rather of the equity against Brunel in respect to the property of Castro & Henriques. (*United States* v. *Fisher,* 2 *Cranch,* 358, 391, *n. per Marshall, C. J. Aiken* v. *Dunlap,* 16 *John.* 77, 85, *S. P. per Platt, J. Mott* v. *Mairs' assignees,* 12 *Wash. C. C.* 196.) The complainants are not entitled to interfere in regard to the amount secured to Brunel, by the assignment of Castro & Henriques, and they are not entitled to the relief sought in the bill. The assignment was valid, and gave Brunel a lawful preference. With the exception of the small sum of $6873,83, for money paid, the assignment to Brunel was to pay United States debts; and Castro & Henriques had an undoubted right to pay which of the bonds they pleased. The priority given, in the case of an assignment coming within the 65th section of the act of congress of 1799, does not supersede or over-ride the assignment, or avoid it. (*Conrad* v. *Atlantic Ins. Co.* 1 *Peters,* 439. *Brent* v. *Bank of Washington,* 10 *Id.* 596.) The complainants Nicoll and Smith do not show any right to set up or enforce a priority of payment out of the assets of Castro & Henriques. (*Cole* v. *Sackett,* 1 *Hill,* 516.) The complainants' claims are barred by the statute of limitations. (*Humbert* v. *Trinity Church,* 7 *Paige,* 195. *Story,* 416, *n.* 3, *cites Gething* v. *Vigins, before the H. of L., Nov.* 8, 1836.)

*J. L. Mason,* for the respondents. The complainants are entitled, under the statements of the bill, to the discovery and relief thereby sought against the defendant. The demurrer for want of parties should be overruled, inasmuch as it does not show who ought to be added as parties to

the suit. (*Mitf. Pl.* 181, 3d *Am. ed. by Edw. Story's Eq. Pl.* 203. *Robinson* v. *Smith*, 3 *Paige*, 222.) The bill is not defective for want of parties. It is not a bill filed in behalf of all the creditors of Castro & Henriques, nor for an account of the execution of the trusts of the assignment; but it is in behalf of a particular class of creditors who are entitled to a priority over all others, viz. sureties of Castro on bonds to the United States. (*Inger. Abridg. Laws U. S. p.* 861, *act of* 3 *March*, 1797. *Id. p.* 157. *Hunter* v. *United States*, 5 *Peters*, 172.) ' And these creditors standing in the same situation as to their rights or claims on the fund, are the only necessary parties to the suit. (*Hallet* v. *Hallet*, 2 *Paige*, 19. *Egbert* v. *Wood*, 3 *Id.* 517, 520. *Burney* v. *Morgan*, 1 *Sim. & Stu.* 358.)

THE CHANCELLOR. The objection for the want of proper parties in this case cannot be sustained. Lord Redesdale, in his valuable treatise upon equity pleading, (*Mitf. Pl.* 4*th Lond. ed.* 180,) says, a demurrer for want of parties must show who are the proper parties. Not indeed by name, for that might be impossible ; but in such manner as to point out to the complainant the objection to his bill, and thus enable him to amend by adding the proper parties. And in this he appears to be sustained by all the standard treatises upon the subject of equity pleading. (*See Coop. Eq. Pl.* 187 ; *Welf. Eq. Pl.* 279 ; *Story's Eq. Pl.* 416, § 543.) Lord Cottenham, in the recent case of *The Attorney General* v. *The Corporation of Poole*, (4 *Myl. & Craig.* 32,) expressed a doubt as to the correctness of the rule as laid down by Lord Redesdale, and these other elementary writers. And he refers to what he calls the doubt suggested by Lord Eldon in *Pyle* v. *Price*, (6 *Ves.* 781.) Mr. Daniell has, however, as I think, taken the proper view of what was said by Lord Eldon in the case referred to. He is of opinion that the observation which is reported to have been made by Lord Eldon, in *Pyle* v. *Price*, does not at all shake the rule which has been laid down, as to the necessity of pointing out who the necessary party is, by the de-

murrer. He says the remark of his lordship merely referred to an observation made by the counsel for the defendants, that there was no rule requiring the demurrer to state the parties, that is by name, as it might be out of the power of the defendant to do so ; and that the observation of Lord Eldon, that perhaps there was not a general rule either way, did not refer to the necessity of calling the complainant's attention to the description or character of the party required, in order to enable him to amend his bill, and without putting him to the expense of bringing his demurrer to argument for the purpose of ascertaining who the defendant supposed was the necessary party. (1 *Dan. Ch. Pr.* 386.) I shall therefore adhere to the rule as originally laid down by Lord Redesdale, according to its spirit and intent ; and shall hold that, in a demurrer for want of parties, the defendant must point out the necessary parties, either by name, in reference to some statement of their names in the bill, or by their characters, as the heirs, devisees, personal representatives, assignees, creditors, &c. of some of the persons therein named or referred to.

The case under consideration shows the necessity and propriety of such a rule. For upon the argument of the demurrer the counsel suggested four distinct classes of persons who ought to have been made parties to the suit, and yet none of them appear to be necessary parties ; and the only persons who I can suppose to be proper parties, taking all the allegations in the bill to be true, are persons who were not named or referred to by the counsel for either party, upon the argument.

The first objection was that the creditors of Castro & Henriques should have been made parties, by filing the bill in behalf of the complainants and all others of their creditors. The answer to that objection is that the assignment was not made for the benefit of the general creditors of the assignors, but only to pay the particular debts specified therein. It was then urged that Cazeaux, who appears by the schedule to have been a co-surety in some of the custom house bonds provided for in the assignment, should have been made a

party. But it is fairly inferrible from the bill that his bonds have been paid. And in the absence of any suggestion in the bill to the contrary, the presumption is that they were paid out of the assigned fund, which it is averred was sufficient to pay all the bond debts. If those particular bonds were in fact paid by Cazeaux, and any part of the money thus paid was still due to him, so as to give him a common right with the complainants to be substituted in the place of the United States, and to be paid out of the assigned fund, the fact should have been brought before the court by plea or answer. And then it might have been necessary for the complainants to have brought him before the court, either as a defendant, or by amending their bill and stating that it was filed in behalf of themselves and all others who were sureties in the bonds given by the assignors, or either of them, for duties, and who had paid such bonds, so as to be entitled to be subrogated to the rights and remidies of the United States, as against the assigned fund, and against the personal representative of Brunel and the estate of the decedent in his hands.

Another objection upon the argument was that Thiolliere, who was a surety in some of the custom house bonds provided for in the assignment, as well as in several which were not so provided for, should have been made a party. As the bonds signed by him, and provided for in the assignment, are not among those which are stated in the bill to be still due, the presumption is that they were paid out of the assigned fund. All the other bonds signed by him are alleged in the bill to be still due to the United States, so that he is not entitled to be subrogated in their place. And the United States being made a party, a decree in their favor, as prayed for in the bill, must necessarily protect him so far as he needs any protection, and is equivalent to an express declaration in the bill that it is filed for his benefit as well as that of the complainants.

As to the objection that the bill should have made the other creditors of the estate of Brunel parties, it would be a sufficient answer that it does not any where appear that

there are any other creditors of his who now have any claim upon the fund in the hands of his executor, or that the estate was insolvent. It is only alleged in the bill that the defendant gave out and pretended that the estate was insolvent, and yet paid the other creditors of the estate without providing for the priorities to which the United States and the complainants were entitled. And in a suit against the personal representative to recover a debt due from the estate of the decedent, it is only necessary for the complainant to file the bill in behalf of himself and all other creditors standing in the same situation, where it appears upon the face of the bill that there will be a deficiency in the fund, and also that there are other creditors who are entitled to a rateable proportion with the complainants. (*Egberts* v. *Wood*, 3 *Paige's Rep.* 520.) Such an allegation in the bill is not necessary, to enable the court to make a general decree for the benefit of all the creditors, where the answer of the defendant shows that the estate is insolvent, and that there are other creditors who have an interest in the fund. (*Story's Eq. Pl.* 103, *note.*) That principle, however, only applies to a bill filed by a single creditor, or by several creditors for a debt due to them all. For several creditors, having distinct debts against the estate, cannot file a bill for their respective debts, without making all other creditors having a common interest with them parties to the suit, or stating in the bill that it is filed in behalf of themselves and of all the other creditors who have a common interest with them.

But in the present case it would have been wholly inconsistent with the claim of the complainants, as made by the bill, to have inserted a clause declaring that the bill was filed in behalf of themselves and of all other creditors of Brunel. For their claim is adverse to the other creditors, if any there be, not only as it respects the fund in the hands of the defendant which is alleged to be a part of the assigned property, but also as to the general assets of the decedent. And the decision of Lord Hardwick, in *Peacock* v. *Monk*, (1 *Ves. sen.* 131,) is an authority to show that where

a special claim is made against the personal estate of the decedent, adverse to the rights and interests of his general creditors, it is only necessary to make the personal representative a party ; and that it is the duty of such representative to defend the estate in his hands against such claim.

The persons not referred to upon the argument as necessary parties, and who yet appear to me to have such a common, or rather connected interest with the complainants, in taking the account of the application of the assigned property by Brunel, and in the specific claim against the executor for that part of it which came into his hands, if it remained in specie or was in a situation to be traced and identified, as to render them proper parties, are Castro & Henriques, or their assigns or representatives. From the charges in the bill it appears that the property which came to Brunel under the assignment was at least $80,000. And the whole amount of the custom house bonds due to the United States, upon which Castro was liable either as principal or as surety, and of the duties for which he or his copartner was liable, including the bonds not provided for in the assignment, was much less than the amount of the assigned property ; after paying out of such assigned property the $6873,83 of other debts provided for in the assignment. This surplus, by the terms of the assignment, was to be re-transferred to the assignors, or to be held in trust for such purposes as they should afterwards direct. And if they have given no such direction they, or their representatives if they are dead, are the proper persons to receive such surplus and apply it to the payment of their general creditors. I think the defendant would, therefore, have had the right to insist, in relation to a part of the relief prayed for by the bill, that such persons should be made parties ; so as to make the account of the trust and of the application of the trust property conclusive upon them, and that he might not be compelled to account a second time to them in relation to the same matter. (*Cocker* v. *Lord Egmont*, 6 *Sim. Rep.* 311.) But a person may be a necessary party, within the meaning of the rule requiring all persons interested to be made parties, although the proper decree may be made, as to the subject

matter of the litigation, in his absence if the defendant makes no objection. And in such a case, if the defendant neglects to make the objection, by plea, answer, or demurrer, of the want of parties who are only necessary to protect him from further litigation, the court, in its discretion, may refuse to sustain the objection at the hearing, or to require the cause to stand over to add new parties in that stage of the suit. As the objection that Castro & Henriques were not made parties was neither made by the demurrer upon the record, nor by the counsel ore tenus at the hearing, it cannot authorize a reversal of the decretal order appealed from ; and that order must be affirmed, unless the demurrer can be sustained upon the equity of the case of the complainants, as made by their bill.

To sustain a bill filed by several complainants, upon a general demurrer to such bill for want of equity, it must appear that all of such complainants have an interest in the subject matter of the litigation. (*King of Spain* v. *Machado*, 4 *Russ. Rep.* 225. *Cuff* v. *Platell, Idem*, 242.) And if the claims of all these complainants cannot be sustained, either wholly or in part, the decretal order appealed from must be reversed, and the demurrer allowed. Independent of the question whether the United States was entitled to a preference in payment, out of the assigned fund, as to bonds for duties not provided for in the assignment, the complainant Dias, upon the facts stated in the bill, has a claim upon the trust fund which came to the hands of the executor, for the money he has paid to the United States. For the bonds signed by him and Brunel as co-sureties, being part of the debts provided for in the second class of debts under the assignment, Brunel had no right to apply the whole fund, even if there was a deficiency, to pay the amount due upon those bonds only on which he was liable as the sole surety therein. But his co-sureties were, in equity, entitled to have a rateable portion of the fund, after paying all the debts of the first class, applied to the payment of each of the bonds and of the other debts provided for in the second class. And if the as-

signed fund was also liable for the payment of all the other debts to the United States not provided for in the assignment, Dias still had the right to have the whole fund applied to the payment of all the bonds rateably, as between him and the assignee. Dias was not compelled to pay the balance due upon the two bonds on which he was liable as surety, until 1834 ; and the ten years limitation, as to suits in equity where there is no concurrent remedy by action at law, did not therefore commence running, as against Dias, until such payment was made by him.

The assignment in the present case does not, upon its face purport to convey all the property, either joint or several, of the assignors. But the averment in the bill shows that it was all assigned. And it has been decided that if there was in fact an assignment of all the property of the debtor of the United States, that is sufficient to bring it within the act.

The objection that the copartnership fund could not be applied to pay the bonds signed by Furman, as surety for Castro only, is not well taken. For it appears from the bill that those bonds were given for the duties upon goods imported for the copartnership. The custom house bonds signed by Castro, as principal, were therefore partnership· debts. Besides, the assignment itself shows that some of the individual property of Castro was in fact assigned.

Upon an examination of the opinion of Judge Story, in the recent case of *The United States* v. *McLellan*, (3 *Sum. Rep.* 345,) I was inclined to doubt whether the assignment in the present case was within the acts of congress giving preferences. For upon referring to the assignment it will be seen that it provides for the payment of no debts except those which are due to the assignee, or for which he was personally liable as a surety. And instead of applying the residue of the assigned fund to the payment of the other debts of these insolvent assignors, the assignment declares that it is to be re-assigned to them, or to be holden for such uses and trusts as they shall thereafter direct. Such an assignment, if the assigned property was in fact worth nearly double the amount of the debts provided for therein,

as appears by this bill, would undoubtedly be fraudulent as against the other creditors. But as such creditors did not attempt to assert their rights to set aside the assignment on the ground of fraud, neither the assignee nor his personal representative, can object to the priority of the United States on that ground alone ; as fraud only makes the assignment voidable, but not void. I think it is pretty evident, in this case, that the object of Castro, in making this assignment, was solely to protect the assignee, and not to provide for the general application of the property for the benefit of any other creditors ; except so far as they must necessarily be benefitted by indemnifying Brunel. The words " voluntary assignment" in the 65th section of the act of 1799, to regulate the collection of duties upon imports and tonnage, (1 *Story's ed. of Laws of U. S.* 630,) as well as in the corresponding section of the act of March, 1797, (*Idem,* 465, § 5,) unquestionably mean an assignment of all the debtor's property, in trust, to pay debts ; as contradistinguished from a mere sale thereof to a creditor in payment of his debt, or the pledge or hypothecation of the property to a particular creditor, as a mere security, in the nature of a mortgage. The case of the *United States* v. *McLellan,* arose upon a transfer of the latter description, and was rightly decided. But in the case under consideration there was a technical assignment, in trust, of all the property of the debtors, and it was in fact for the benefit of all the creditors named therein ; whatever might have been the secret objects of the assignors and of the assignee. And although, if the amount of the assigned property was as large as is stated in the bill of the complainants, it was not all directed to be applied to the payment of the debts of the insolvent debtors, it was such a divesting themselves of the property as to bring it within the spirit and intent of the statutes creating priorities in favor of the United States. Furman, therefore, upon payment of the bonds signed by him as surety, was entitled to be substituted in the place of the United States, in relation to their claim upon the fund by virtue of those bonds.

No question can arise upon the statute of limitations as to Furman ; as the time when he paid the bonds to the United States is not stated in the copy of the bill with which I have been furnished, the time being left in blank. It may perhaps be inferred, however, from the amount of interest paid upon the bonds, as stated in schedule F., that they were in fact paid in the fall of 1824. That inference, however, is not sufficient to sustain the demurrer ; but the defendant, if the right of suit of this complainant was in fact barred at the time of filing the bill, should have raised the objection by a plea, or by insisting upon it in an answer.

The right of the complainants Dias and Furman to substitution, in the place of the United States, is expressly given to them by the 65th section of the revenue act of 1799, before referred to, as to the bonds in which Castro was the principal debtor. For his insolvency and assignment gave to the United States a priority as to the assigned fund, which priority attached upon that fund at the time of the assignment to Brunel. Dias and Furman, as the sureties in those bonds respectively, afterwards paid the debts to the United States, and thereby became subrogated to the rights of the United States as against the assigned fund. And if the assignee and his executor had notice of the several bonds to the United States, and of the parties to the same, they had legal notice of the rights of the sureties in such bonds to substitution, in case such bonds should not be paid to the United States out of the fund as to which the preference was given. Brunel had actual notice of the bonds signed by Dias as one of the sureties, not only by the schedule annexed to the assignment, but also by signing those bonds with him as a co-surety. But I have not been able to find any allegation in the bill that he had notice of the existence of the bonds signed by Furman, as surety for Castro, or of the facts upon which the claim of Smith & Nicoll is founded. Nor is the averment in the bill, that before the letters testamentary were granted to the defendant, Bouchaud, he well knew the whole amount of indebtedness of the estate of Brunel to the United States, and

that Brunel had a large amount of assigned property, and that a large amount of custom house bonds of Castro remained unpaid, sufficient to charge the executor with notice of the claim of Smith & Nicoll, which claim clearly was not a debt due to the United States at the death of Brunel, nor of the claim of Furman, if, as I suppose, the bonds of the latter had been paid to the United States long before that time. The bill therefore is wholly insufficient, in this respect, to charge either Brunel or his executor with a misapplication of the funds upon which these complainants claim to have had a preference.

Again ; I think Smith & Nicoll have wholly failed, in this bill to show that they were entitled to a preference under the statute, or to be subrogated to any rights of the United States at the common law ; even if their claim, which arose in March, 1824, was not barred by the lapse of time. It appears by the complainants' bill that the duties upon both parcels of brandies were in fact secured, by the bonds of Castro as principal and of Thiolliere as surety as to one parcel, and the bond of Castro as principal and of Brunel as surety as to the other parcel. From this it would appear that the lien of the United States upon the brandies no longer existed. For as soon as the duties are paid, or are secured by the importer, by a bond with sureties, as required by law, the lien which previously existed upon the goods is at an end. And the goverment cannot hold the sureties liable upon the bonds, and at the same time retain the goods as an additional security. The act of April, 1818, providing for the deposit of wines and distilled spirits in public warehouses, and for other purposes, to which I was referred by the complainants' counsel on the argument, (3 *Story's Laws of U. S.* 1714,) does not give a lien upon the goods, in addition to the bonds with security. The provisions of the act referred to, merely authorized the importer, at his option, at the time of entering these brandies, to secure the duties thereon, upon the same terms and stipulations as on other goods ; that is, by three bonds with sureties, payable in eight, ten and twelve months, as directed

by the 62d section of the act of March, 1799, (1 *Story's Laws U. S.* 627,) or to give his own bond, without security, payable in twelve months, accompanied by a deposit of the brandies in the public warehouse; with the privilege of taking them out upon giving the bonds with sureties, on the same terms of credit as he might have had originally. And the collector was only authorized to sell the brandies in case the duties had neither been paid nor secured to be paid in the manner directed by that act. When these duties had been secured, therefore, by the six bonds with sureties, and the special permit given for the delivery of the brandies, the lien upon them was at an end. It is true, if the bonds had not been given to the collector, as it is stated in the bill that they were, and if the pretence was true that the permit had been surreptitiously obtained, the lien of the United States would not have been lost. But the failure of the principal in the bonds, or even of Brunel and Thiolliere the sureties, after the duties had been secured as directed by the statute, would not restore the lien and authorize the collector to sell the brandies for the duties. And in this case, there is nothing in the bill to show that the complainants even believed that the duties had not in fact been secured, or that the allegation of the collector that the permit had been surreptitiously obtained was true. Nicoll, therefore, acquired no lien, either at law or in equity, upon the assigned fund, by this unauthorized act of the collector. Another objection to this claim of Smith & Nicoll is, that it does not appear from whom E. H. Nicoll purchased the brandies, or that the notes given by him were ever paid to Castro & Henriques or to their assignee.

Two of the complainants, therefore, have wholly failed to show any right to join with the other complainants in filing this bill. And this being a fatal objection, upon demurrer to the whole bill, the decretal order overruling the demurrer must be reversed with costs, and the demurrer must be allowed. The complainants are to be permitted to amend their bill, by striking out the names of Smith &

Nicoll as complainants, and in such other manner and upon such terms as the vice chancellor, upon application to him, and on due notice to the defendant, may think proper to direct. The proceedings are to be remitted to the vice chancellor, with directions to dismiss the bill with costs unless the complainants shall amend the same, in such manner as may be permitted by him, and pay the costs, within sixty days from the time when their solicitor shall receive notice of the decretal order to be entered on this appeal.