Argued July 21; decided November 9, 1896; rehearing denied August, 1898.

## STATE EX REL. *v.* METSCHAN.

[46 Pac. 791, and 53 Pac. 1071.]

PARTIES—ENJOINING PAYMENT OF WARRANTS.—The owner of a state or county warrant is a necessary party to a suit to enjoin its payment.

DEFECT OF PARTIES—SUFFICIENCY OF DEMURRER.—Under Hill's Ann. Laws, § 68, providing that a demurrer shall be disregarded unless it distinctly specifies the grounds of objection, a demurrer for want of necessary parties must point out in some definite way, from the facts stated in the complaint, those who should have been made parties but were not; and a demurrer on the general ground that there is a defect of parties plaintiff and defendant is insufficient. ·

INJUNCTION BY STATE.—A suit may be maintained by the state in its sovereign capacity, on the relation of its executive law officer, to enjoin the payment of money from the state treasury on a warrant issued in pursuance of an act of the legislature which is claimed to be in violation of the state constitution, without showing any injury other than that public funds are about to be applied to a use, for a purpose, or at a place, prohibited by the constitution.

POWER OF LEGISLATURE to LOCATE PUBLIC INSTITUTIONS.—The legislature has no power to provide for the establishment or maintenance of a public institution at any place other than the capital. The question of the location of such institutions is settled by the state constitution, and the legislature is powerless in the matter.

INSANE ASYLUM IS A STATE INSTITUTION.*—An insane asylum maintained by the state is a public institution within the meaning of article XIV, section 3 of the constitution.

CONSTITUTIONAL LAW—LOCATION OF INSANE ASYLUM.—The act of the legislature (Laws, 1893, 136) authorizing the establishment and maintenance by the state of a branch insane asylum at some point in Eastern Oregon is in violation of the constitution and void.

PRESUMPTION OF INJURY BY ILLEGAL ACT.—An injury to the state in its sovereign capacity will be conclusively presumed from the application of public funds to an unlawful purpose, and the payment thereof will be enjoined.

PRACTICE IN SUPREME COURT—DECREE ON DEMURRER.—Where a decree entered on a general demurrer to a complaint is affirmed on appeal, and the court does not make a final disposition of the cause, but remands the same to the court below, it will be open for that court to

*NOTE.—As to the nature of incorporated institutions belonging to a state see note to *State, Little* v. *Board of Regents of University* (Kan.), 29 L. R. A. 378.—REPORTER.

determine, in the first instance, whether the defendant shall be permitted to answer or not: *Powell* v. *Dayton, etc. Railroad Company*, 14 Or. 22, and *Fowle* v. *House*, 30 Or. 305, cited and applied.

From Marion: Henry H. Hewitt, Judge.

This is a suit, commenced by the district attorney of the third judicial district, in the name of and on behalf of the state, to enjoin Phil. Metschan, as state treasurer, from paying a $25,000 state warrant issued on account of the purchase of certain land in Union County for the site of an insane asylum under an act of the legislature of 1893 (Laws, 1893, 136), on the ground that the act in question is void, because in contravention of the provision of the constitution locating such institution at the seat of government. A demurrer to the information, for the reason that it does not state facts sufficient to constitute a cause of suit, and "that there is a defect of parties plaintiff and defendant," was overruled. Defendant declined to plead further, a decree was entered as prayed for in the information, and this appeal was taken.

Affirmed.

For appellant there was an oral argument by *Mr. Julius C. Moreland* and a brief to this effect.

The complaint simply alleges that the act of 1893 is unconstitutional without showing any particular injury. A mere suggestion that the act complained of is unconstitutional, and that the legislature has exceeded its constitutional limitations, is not sufficient to call into requisition a court of equity: *State* v. *Pennoyer*, 26 Or. 205 (37 Pac. 906, 25 L. R. A. 862); *People* v.

*Canal Board,* 55 N. Y. 395. The other questions as to the constitutionality of the law, the right of the district attorney to bring this suit, and the right of the state to interfere in matters *publici juris* are fully set forth in the briefs and opinions on file in this court in the cases of *State* v. *Pennoyer,* 26 Or. 205 (25 L. R. A. 862), and *State ex rel.* v. *Lord,* 28 Or. 498.

Our contentions may be briefly stated as follows:

1. The principal issue of the case at bar is the same as that of *Sherman* v. *Bellows,* 24 Or. 553, and *State* v. *Pennoyer,* 26 Or. 205 (25 L. R. A. 862).

2. There is no allegation of special damage in the complaint.

3. Where there is no special injury alleged and established there can be no injunction.

4. The purposes of the act of the legislative assembly in question are constitutional.

5. Twenty-five years of legislative action have construed the provisions of the constitution in question as we claim it should be.

6. The proviso in section 3 of article XIV of the constitution was a restriction upon the power of the legislative assembly to locate all public institutions at the seat of government for the period of 20 years only.

7. That the proposed asylum in question was not such an institution as was contemplated by the constitution for the reason that when the constitution was adopted there was no such thing in Oregon as an insane asylum.

There is clearly a defect of parties defendant in this cause. Who the owner of the warrant is does not

appear from the complaint.   Whoever it is has an
interest in the result of this suit.   It was drawn in
payment of the land, and the presumption is the land
owners own it; at least they have an interest in it.
That the owners are necessary parties, see: *City* v.
*Anthony,* 30 Pac. 448; *Carpenter* v. *Hindman,* 5 Pac.
165; *Brice* v. *Cunningham,* 29 S. W. 801; *King* v. *Com-
missioners,* 30 S. W. 257.

## ON APPLICATION FOR REHEARING.

This is the third time this cause has been before
this court, with the state as plaintiff and this defend-
ant as a defendant, and concerning the same subject
matter; and for the same purpose, to enjoin the pur-
chasing of ground and paying for the same at Union.
The last case came here upon the allegation of the
answer that the land had been purchased and a war-
rant issued to pay for the same.   This makes it the
same case and between the same parties sufficiently to
involve the rule of *stare decisis.*   The claim is that the
legislature has directed that the branch asylum shall
be located at a place other than the seat of govern-
ment, in violation, as plaintiff claims, of the duty
imposed upon it by the constitution; and this, it is
asserted, is sufficient ground upon which a court of
equity should assume jurisdiction.   This is not
enough.   The construction and location of public
buildings of the character in question is purely a
public governmental question, belonging to the legis-
lative and governmental departments, and affects no
private or property right.   Nor do the facts in this
case justify the conclusion, as a matter of law, that it

would be of any pecuniary injury to the state. If the legislative and executive departments have misconstrued the constitution in this regard their responsibility is to the people. A court of equity cannot for that reason alone assume the right to sit in judgment on their acts. The decision of a large class of public questions must in the very nature of the case be left to the legislative and executive departments, and when the decision is made it must be accepted as correct. Among these is the construction and location of public buildings, and the presumption is just as conclusive that in the discharge of this duty they observe the provisions of the constitution as it is that the courts properly interpret that instrument when called upon to do so in the discharge of the duty intrusted to them. No greater evil could exist, under our form of government, than the usurpation by the judiciary of powers not intrusted to it. It should therefore refuse, under all circumstances, to assume jurisdiction in case which affects the powers, duties or prerogatives of the other departments of government, unless its right to do so is so clear as to admit of no reasonable doubt.

These questions have been decided, and it seems, under the authorities, should be held as the law of this case: (1) That without an injury, actual or threatened, there can be no injunction. (2) That the state, when it goes into court, must come with the same allegations of damage and injury threatened as an individual. (3) That the state has a right and it is its duty to care for the unfortunate insane, and that there is no financial injury to the state in building an asylum in Eastern Oregon. (4) That the fact

that this asylum is established at a point away from the capital is a matter *publici juris*, for which legislation the legislature is responsible to their constituents and not to the courts. That courts are formed to deal with property rights, and there being no financial injury to the state, the action of this board in attempting to carry out a law of the state cannot injure the state in a financial point, and that until it is so injured equity will not interfere.

The reform school is not at the capital. The cottage farm is not at the capital. Now, then, in view of this holding of the court that this section of the constitution "should now be construed so as to include only such institutions as are directly governmental in their character," it seems the better view would be to hold that the legislature has also adopted a construction of this constitution that the insane asylum, as we have attempted to show, is not a governmental institution.

For respondent there was an oral argument by *Messrs. Wallace W. Thayer, Henry St. Rayner, H. J. Bigger, W. H. Holmes* and *S. L. Hayden,* district attorney, and a brief to this effect.

The demurrer should state specifically in what the defect of parties consists; it is not sufficient if it merely follows the words of the statute: *Irvine* v. *Wood,* 7 Colo. 477; *Kent* v. *Snyder,* 30 Cal. 666; *Skinner* v. *Stuart,* 13 Abb. Pr. 442; *Baker* v. *Drury,* 29 Wis. 580; *Dewey* v. *State,* 91 Ind. 182.

1. The principal issue of this case is not the same

as the issue in the *Sherman Case* (24 Or. 533), or the *Taylor Case* (26 Or. 205, 25 L. R. A. 962.) The distinctions are quite clear: (1) There a private taxpayer was the plaintiff, here the state is plaintiff acting through its law officer. (2) There no allegation was made that the warrant had been issued, here it is averred that a warrant for $25,000 has been issued. (3) There it was not alleged that the burden of state taxation would be increased, and the public funds wasted and the state damaged, here each of those requirements is specifically alleged. (4) In those cases there was no allegation that the state treasurer would pay the money of the state on the warrant unless restrained, while here it is directly alleged that he is threatening and will, unless prevented, pay out the public funds. These are clearly enough to require the preventive writ.

2. The complaint does allege special damage, and the demurrer admits the claim to be true. The law conclusively presumes that the state will be injured when an attempt is made to misapply public funds under an act in violation of its constitution; it is a public wrong, the violation of a public right, and as such an injury to the state.

3. We concede that there cannot be an injunction in such cases as this when an individual is the plaintiff, but not so when the sovereign state is complaining. Any attempt to misapply public funds under color of an unconstitutional act is conclusively presumed to work an injury to the state. Why? Because the constitution is the paramount law of this commonwealth, and any infringement of its express

or implied provisions is a public wrong.   The object of the constitution is not to grant legislative power, but to restrain it:   Cooley on Constitutional Limitations, *173, *174; *People* v. *Albertson*, 55 N. Y. 50; *Taylor* v. *Commissioners*, 23 Ohio St. 22.

The law is well settled that state officers will be enjoined from committing a breach of trust or from committing some illegal act under color of right which will affect public rights:   10 Am. & Eng. Enc. Law (1st Ed.), 968; 2 High on Injunctions, § 1327; 2 Daniel's Chancery, 1573; Green's Brice's Ultra Vires (2d Ed.), 708, 712; *Wood* v. *City of Brooklyn*, 14 Barb. 425; S. C. 75 N. Y. 369; *People* v. *Mayor*, 32 Barb. 102; *Blake* v. *City of Brooklyn*, 26 Barb. 301; *Doolittle* v. *Supervisors*, 18 N. Y. 155; *Breuster* v. *City of Syracuse*, 19 N. Y. 116; *Self* v. *Jenkins*, 71 N. C. 578; *Aurora Railroad Company* v. *Laurenceburg*, 56 Ind. 80; *Ellis* v. *Earl of Gray*, 6 Simmons, 214.

4.   It is contended that the purposes of the act providing for an asylum are constitutional.   Yes — provided these purposes are carried out at the seat of government.   Under the provisions of sections 1 and 3 of article XIV of the state constitution the legislature was restricted to the seat of government in locating all public institutions created after the adoption of the constitution — it is true that public institutions for any proper purpose may be created, but they must be at Salem.   If this position is not well taken, then the legislative assembly may change the seat of government, and the constitution be subject to the caprice of every legislature.

5.   It is contended that 25 years of legislative ac-

tion has construed this clause of the constitution.
This is an inadmissible plea either in law or equity.
The courts alone are the final arbiters, and they only
are vested with the power to pass upon the constitu-
tionality of the acts of the legislative assembly, and
to construe the provisions of the constitution — and
the question arises is this act constitutional? If the
intent of the framers of the constitution was that all
public institutions thereafter provided for by the legis-
lative assembly should be located at the seat of gov-
ernment, it is sufficient under every authority of
weight and standing for the courts to inquire into the
act so as to determine whether or not it is in conflict
with the scheme enunciated in the constitution itself.

6.   The contention that the provisio in section 3
of article XIV of the state constitution was a restric-
tion upon the power of the legislature to locate public
institutions for a period of 20 years only is without
the slightest foundation in reason, logic or constitu-
tional interpretation.   The word "hereafter" does not
mean for 20 or any other number of years, but for-
ever, or as long as that clause of the constitution
stands.   And the debates of the constitutional con-
vention clearly show that such was the intent of the
members.

7.   If this is an institution erected at public ex-
pense, for public purposes, and it is public property,
then it is a public institution: *State* v. *North*, 34 N.
J. Law, 377; *Sherman* v. *Bellows*, 24 Or. 553; *State* v.
*Pennoyer*, 26 Or. 205 (25 L. R. A. 862).

MR. JUSTICE BEAN, after stating the facts, delivered
the opinion of the court.

In support of the demurrer it is contended that
there is a defect of parties defendant, because the
owner of the warrant, the payment of which is sought
to be enjoined, is not a party to the suit.   If this is
true, and the objection had been properly taken, it
would have been fatal.   The rule undoubtedly is that
the owner of a state or county warrant is a necessary
party to a suit to enjoin its payment, and in some
instances the courts, deeming him an indispensable
party, refuse to proceed to a final determination of
such a suit until he is brought in, although the parties
to the record make no objection on that account, or
even consent to proceed without him: *City of Anthony*
v. *State*, 49 Kan. 246 (30 Pac. 488; *Buie* v. *Cunning-
ham* (Tex. Civ. App.), 29 S. W. 801; *King* v. *Com-
missioners' Court* (Tex. Civ. App.), 30 S. W. 257; *State*
v. *Anderson*, 5 Kan. 90; *Graham* v. *City of Minneapolis*,
40 Minn. 436 (42 N. W. 291); *Ship Channel Company*
v. *Bruly*, 45 Tex. 6; *Board* v. *Texas, etc., Railway Com-
pany*, 46 Tex. 316.   But in this case, while it is not
apparent, from the face of the information, to whom
the warrant was issued, or by whom it was owned at
the time the suit was brought, the undertaking and
order for a preliminary injunction and the decree ap-
pealed from all state that it was issued to the present
defendant;  so that the court would hardly be justified
in holding that it affirmatively appears there is a
defect of parties.

But, however this may be, the demurrer itself is
insufficient, both in form and substance, to raise the
question.   The statute provides that objections ap-
parent upon the face of the complaint, other than

such as go to the jurisdiction of the court and that it does not state facts sufficient to constitute a cause of action or suit, are waived, unless taken by demurrer (Hill's Ann. Laws, § 71), and that a demurrer shall be disregarded unless it distinctly specifies the grounds of objection (Hill's Ann. Laws, § 68). At common law a demurrer for want of necessary parties defendant was required to point out, either by name or in some other definite way, from the facts stated in the bill, those who should have been, and who were not, made parties to the suit, so as to enable the plaintiff to obviate the objection by bringing them in (Story's Equity Pleading, § 543; *Dias* v. *Bouchaud,* 10 Paige, 445); and this rule has not been abrogated by the provisions of the code: 1 Rumsey's Practice, § 383; 1 Van Santvoord's Pleadings, 75; *Durham* v. *Bischof*, 47 Ind. 211; *Dewey* v. *State*, 91 Ind. 173; *Baker* v. *Hawkins*, 29 Wis. 576; *Kent* v. *Snyder*, 30 Cal. 666; *Irvine* v. *Wood*, 7 Colo. 477 (4 Pac. 783). Now, the language of the demurrer in this case is "that there is a defect of parties plaintiff and defendant," and this, as we have seen, is insufficient; so that the question is not raised by the demurrer, nor can the case be classed with those in which the courts have refused to proceed to the determination of a suit to enjoin the payment of a state or county warrant without the owner or holder thereof being a party to the suit. As already suggested, the record indicates that the warrant in question was issued to the defendant, and, if so, there is no defect of parties: *Dorothy* v. *Pierce*, 27 Or. 373 (41 Pac. 668). But, whether it was or not, the questions involved do not depend upon

converted facts for their solution, but are questions of law, which have been ably and exhaustively argued, and can be determined on this appeal without affecting the interests of the warrant holder, should he prove to be other than the defendant, except so far as the doctrine of *stare decisis* may apply to any future proceeding which may be instituted by him to enforce its payment. The demurrer for want of proper parties was, therefore, properly overruled; and if, by reason of the facts, the warrant holder should have been made a party to the suit, either on his own account or as a protection to the defendant, it should have been made apparent by answer, and, if necessary, the court could have stayed the proceedings until he could be brought in.

It is next contended that the information does not state facts sufficient to authorize a court of equity to interfere by injunction to restrain the payment of the warrant in question, for the reason that it does not appear that the state would be pecuniarily injured or damaged by the construction of an insane asylum in Eastern Oregon, instead of at the seat of government. The question as to when and by whom a suit can be maintained to prevent the construction of public buildings at a place other than the seat of government has been before this court several times, and it has been held that a private individual cannot do so without showing some special injury to himself (*Sherman* v. *Bellows*, 24 Or. 553, 34 Pac. 549), and that the same rule applies when a suit is instituted in the name of the state upon his relation: *State* v. *Pennoyer*, 26 Or. 205 (25 L. R. A. 862, 37 Pac. 906, and 41 Pac. 1104);

*State ex rel.* v. *Lord,* 28 Or. 498 (43 Pac. 471). But
these cases are not in point in the present controversy·
The one first referred to was a suit instituted by a
private citizen in his individual capacity, without
showing any special injury to himself; and the other
was a proceeding against the board of commissioners
of public buildings by a private citizen, who under-
took to use the name of the state without authority,
and was decided on the ground that it was not brought
by nor against the proper parties. But this is a suit
by the state in its sovereign capacity, as the guardian
of the rights of the people, instituted by its executive
law officer, and can, in our opinion, be maintained
without showing any special injury to the state. It is
enough that the public funds are about to be applied
in a manner prohibited by the constitution. At com-
mon law the attorney-general of England could, by
information in the name of the crown, call upon the
courts of justice to prevent the misapplication of funds
or property raised or held for public use, and, in the
absence of statutory regulations, the district attorney
in this state is vested with like powers: *State* v.
*Douglas County Road Company,* 10 Or. 198; *Dollar
Savings Bank* v. *United States,* 86 U. S. (19 Wall.) 239.
Indeed, the right of the state, through its proper offi-
cer, to maintain such a proceeding, would seem to be
one of the necessary incidents of sovereignty. With-
out it the rights of the citizen cannot be protected or
enforced in cases where he is unable to act for him-
self. In a suit by an individual he is required to
show some special injury to himself; and when, as in
this case, the wrong complained of is public in its

character, affecting no one citizen more than another, it is impossible for him to do so, and for that reason he is without remedy, although he may be injured in common with the other members of the community. In such cases the state has a right, by virtue of its high prerogative power, to call upon the courts, through its proper law officer, to protect the rights of its people. And to support a proceeding for that purpose it is sufficient that the grievance complained of is a threatened invasion of the right of the people to determine what disposition shall be made of the public funds exacted from them by the extraordinary power of taxation. Now, every use of such funds in violation of the provisions of the constitution or organic law must necessarily be of this character. The legislature is but an instrumentality appointed by the state to exercise a part of its sovereign powers. In that capacity it holds the public funds in trust for the people. Except as limited by the constitution, its action within its legitimate sphere is the action of the people; but, when it undertakes to apply such funds in a manner or at a place prohibited by the organic aw, it is not only exercising a power expressly withheld, but violating its trust, and a court of equity will interfere at the suit of the sovereign power to prevent or restrain such an application without being required to show any other injury. It is enough that the threatened disposition is in violation of the will of the people, as expressed in the supreme law of the land.

There are some *dicta* in paragraph 7 of the opinion in the case of *State ex rel.* v. *Lord,* 28 Or. 498 (43 Pac. 471), in which the writer thereof did not concur, ap-

parently in conflict with this doctrine; but it was not necessary to a decision of the case, and, after more mature reflection, we are now all agreed that it was erroneous.   It is based upon the false premises (1) that the location and construction of an asylum at some place other than the seat of government is not a misapplication of the public funds, unless it appears that the burden of taxation will be increased by so doing; and (2) that the location of such an institution is a legislative question.   Manifestly, neither of these positions is sound.   The expenditure of public money at a place prohibited by the constitution is a misapplication thereof, for the simple and very satisfactory reason that it is against the declared will of the people; and the location of a public institution, within the meaning of that term as used in the constitution, is not in any sense a legislative question, but has been determined by the people themselves.   A sufficient injury, therefore, to enable the state in its sovereign capacity to call upon a court of equity for relief is shown whenever it is made to appear that public funds are about to be applied to a use, for a purpose, or at a place prohibited by the constitution.   We conclude, therefore, that the court has jurisdiction.

The only remaining question is whether the act of the legislature authorizing the construction of an insane asylum in Eastern Oregon is in violation of the provisions of the constitution.   By article XIV, section 1 of that instrument, it is provided that the legislature shall not have the power to establish a seat of government, but that such question shall be submitted to and determined by the people at the

polls.   And section 3 of the same article declares that
when the seat of government is so established, it shall
"not be removed for the term of 20 years from the
time of such establishment, nor in any other manner
than as provided in the first section of this article;
*provided*, that all the public institutions of the state,
hereafter provided for by the legislative assembly,
shall be located at the seat of government."   Although
the language of the section quoted is somewhat in-
volved, the evident intention of the framers of the
constitution, and of the people when they adopted it,
was to declare that all the public institutions of the
state thereafter provided for by the legislature should
be located at the seat of government.   It amounts to
and is, in effect, a constitutional location of such insti-
tutions, and the only power vested in the legislature is
to determine the necessity for and the amount of
money to be used in their construction and mainte-
nance.   Any attempt by that body to expend the
public revenue for the erection or maintenance of
such an institution elsewhere is a mere nullity, and
of no more force or validity than a legislative attempt
to change the seat of government.   All such institu-
tions must be located at the place designated in the
constitution, although it may now seem desirable to
do otherwise, until the consent of the people is ob-
tained in the form of a constitutional amendment.
In their sovereign capacity the people have so pro-
vided, and no other power can alter or change their
decree.

That an insane asylum is a public institution of
the state, within the meaning of the constitution, is

too clear for argument. In view of the practical construction of that instrument by the legislative and executive department for almost if not quite a quarter of a century, as evidenced by the erection of educational institutions away from the seat of government, it no doubt should now be construed so as to include only such institutions as are strictly governmental in their character. But an asylum for the insane comes clearly within this construction. When, therefore, the legislature assumed to authorize the expenditure of the public funds for the erection of such an institution in Eastern Oregon, it attempted to exercise a power expressly withheld by the people, and an injury to the state will be conclusively presumed from a threatened application of the public funds to such a purpose. It follows that the decree of the court below must be affirmed, and it is so ordered.

AFFIRMED.

Decided August, 1898.

ON REHEARING.

[53 Pac. 1071.]

PER CURIAM. The petition for rehearing in this case is overruled on motion of defendant's counsel; and on the authority of *Powell* v. *Dayton Railroad Company*, 14 Or. 22 (12 Pac. 83), and *Fowle* v. *House*, 30 Or. 305 (47 Pac. 787), and in accordance with the rule of practice therein announced, his motion for an order remanding the cause to the court below, with permission to apply to such court for leave to answer, is allowed.

REHEARING DENIED.