DECIDED IN

# THE SUPREME COURT

OF

# OREGON.

---

Argued March 20, affirmed April 14, rehearing denied June 2, 1914.

## WOLF v. EPPENSTEIN.*

(140 Pac. 751.)

**Parties—Defendants—Joinder—Action for Rent.**

1. An action for rent cannot be maintained against one who signs an instrument agreeing to pay rent, if the lessees fail to pay, jointly with the lessees, if the sufficiency of the complaint is properly challenged on the ground of misjoinder of parties.

**Parties—"Defect of Parties"—Demurrer.**

2. A "defect of parties" plaintiff or defendant, specified in Section 68, L. O. L., subdivision 4, as a ground for demurrer to the complaint, means that the presence of other parties is necessary to a complete determination of the cause, and a demurrer on that ground must show that the parties are too few, and name those who should be brought in.

**Parties—Misjoinder of Parties—Waiver of Objection.**

3. Under Section 68, L. O. L., subdivisions 4, 5, providing that defendant may demur to a complaint when it appears on its face that there is a defect of parties plaintiff or defendant, or that several causes of action have been improperly united, Section 71 providing that, when any of the matters enumerated do not thus appear, the objection may be taken by answer, and Section 72 providing that if no objection be taken, either by demurrer or answer, defendant shall be deemed to have waived the same, except the objection to the jurisdiction of the court, or that the complaint does not state facts constituting a cause of action, unless the objection of misjoinder of parties is taken either by demurrer or answer, the defect is waived.

---

*As to the liability of a landlord under implied covenant for quiet enjoyment for damages to tenants in consequence of acts of third persons affecting the leased premises, see note in 42 L. R. A. (N. S.) 775.                                                   REPORTER.

**Appeal and Error—Review—Questions of Fact.**

4. On an issue, in an action at law, whether a defendant signed a guaranty subject to an agreement that another guarantor should be secured, the finding of the trial court that he did not do so, based on testimony that the word "we" in the contract was changed to "I" when defendant signed it, is conclusive on appeal.

**Trial—Findings by Court—Construction.**

5. Where the testimony of lessees as to the kinds of business carried on by other tenants, relied on as an eviction, fully sustains the allegations of their pleading and is not controverted, a finding that the averments of the pleading were wholly unproven should be regarded as a conclusion of law that the testimony was insufficient to justify an abandonment on the ground of constructive eviction.

**Landlord and Tenant—Construction of Lease—Covenant of Quiet Enjoyment.**

6. Unless otherwise expressly stipulated, a landlord demising real property impliedly covenants that the tenant shall not be disturbed in the possession and quiet enjoyment of the premises during the continuance of the term.

[As to covenants implied on part of the landlord, see notes in 32 Am. Dec. 355; 43 Am. Rep. 227.]

**Landlord and Tenant—Rent—Eviction of Tenant.**

7. When a tenant is deprived of the enjoyment of the premises by the immoral act of the landlord, such conduct of the landlord is equivalent to an eviction, authorizing the vacating of the property, and constituting a valid defense to an action for any rent subsequently accruing.

[As to what may amount to eviction, see note in 17 Am. Rep. 62.]

**Landlord and Tenant—Rent—Eviction of Tenant.**

8. Where the use of adjoining premises owned by the same landlord and occupied by other tenants has not changed since the commencement of defendant's lease, and the landlord is not shown to have created a nuisance by leasing the adjoining premises for immoral purposes, or to have connived with, or consented to, such use, defendant is not relieved from the payment of rent.

From Multnomah: HENRY E. McGINN, Judge.

Department 1.   Statement by MR. JUSTICE MOORE.

This action was commenced March 8, 1913, to recover money. The plaintiffs H. Wolf and Marcus Wolf on February 9, 1912, leased for the term of three years, from the first of the following month, a room on the ground floor designated as No. 93 Sixth Street, in a three-story building which they owned in Portland,

Oregon, to the defendants A. P. Eppenstein and Fred N. Clark "for the purpose of conducting a liquor store to be known as a bottling business"; the lessees agreeing to pay therefor, in advance, $250 a month for the first year and in the same manner $300 a month thereafter. On a separate sheet of paper, but attached to other sheets thereof on which were set forth the terms and conditions of the lease, the defendant John Rometsch subscribed his name to a memorandum which reads:

"In consideration of one dollar ($1.00) this day paid by H. Wolf and Marcus Wolf, the receipt of which is hereby acknowledged, and the further consideration of H. Wolf and Marcus Wolf this day executing the foregoing lease to A. P. Eppenstein and Fred N. Clark (we) I, the undersigned, do hereby guarantee that the said A. P. Eppenstein and Fred N. Clark will carry out the terms provided in said lease and pay the rent to the said parties of the first part, as provided in said lease, but should the said E. P. Eppenstein and Fred N. Clark, the parties of the second part in said lease, fail or refuse to pay the rent as provided in said lease for any reason whatever (we) I hereby guarantee and agree to assume the payment of the rent upon the premises from the time of said failure, and agree to guarantee to pay the same to the said parties of the first part when it becomes due, promptly according to the terms of said lease."

When the demise was consummated, and at all the times mentioned herein, the plaintiffs had a tenant who occupied as a restaurant a room adjoining that leased to the defendants. The plaintiffs had also let the second story of their building to be used as another restaurant, and the third story they had leased to be occupied by roomers. Pursuant to the terms of their lease, Eppenstein and Clark, at the time specified, took possession of No. 93 Sixth Street, which premises they

held until March 19, 1912, when, with others, they
incorporated the Keystone Liquor Company, under
which name the business was thereafter conducted.
That corporation by Eppenstein, without indicating
his agency, issued to plaintiffs checks for the payment
of the rent as installments thereof severally matured.
The bottling business proving unprofitable, the plain-
tiffs, upon information thereof, reduced the rent for
August and September, 1912, to $200 a month. With
such exceptions the stipulated rent was otherwise paid
to January 1, 1913, when the premises were vacated by
Eppenstein and Clark, who left the key to the door
with the plaintiffs.

The complaint herein alleges in substance the mak-
ing of the lease, the signing of the guaranty, upon a
consideration, the breach in the performance of the
contract, the demand upon Eppenstein and Clark to
pay the installments of the rent, and their refusal to
comply therewith. Judgment is demanded from the
defendants and each of them for $250, with interest
from January 1, 1913, a like sum, with interest, from
February 1st of that year, and $300, with interest,
from the first of the succeeding month.

The answer of Eppenstein and Clark admits the
making of the lease, denies the other material aver-
ments of the complaint, and for a separate defense
alleges the surrender of the premises March 18, 1912,
to the Keystone Liquor Company, and that the plain-
tiffs, being notified thereof, made no demand there-
after upon them for the payment of the rent whereby
they are released from any and all obligations arising
out of the written contract. For a further defense,
the execution of the lease is alleged, and it is averred
that the plaintiffs thereby undertook that these de-
fendants and their successor in interest should have

the peaceable and quiet possession of the demised premises, in order that they might conduct therein a legitimate business in the sale of wines and liquors to the family trade, to maintain which successfully it was necessary that they should receive the patronage of respectable persons; that plaintiffs, well knowing these facts, and in violation of their duty, rented a part of the building adjoining room No. 93 to be used as a notorious saloon and cafe; that they leased the second story for a restaurant conducted by Chinese or Japanese; that they rented the third story to women who with their knowledge and consent used the premises as a house of ill fame; that all the places last named were so conducted with the knowledge and consent of the plaintiffs; that numerous police raids were made at such places and persons of ill repute and bad character were arrested thereat and notices thereof were published in the city newspapers, by means of which the building referred to, including its location, became known as a resort of persons engaged in violating the laws of the state and the municipality; that all of such acts were without the consent and against the objections of these defendants and their successor in interest, who, relying upon the covenants of the lease, invested large sums of money in fixtures, etc.; that, by reason of the acts of the plaintiffs and their other tenants, respectable people, with whom these defendants expected and desired to transact business, refused to visit their premises or to deal with them, because of the bad reputation of the building and of the ill repute of the persons mentioned; that these defendants and their successor in interest notified the plaintiffs of the condition and reputation of the building, and because of their failure to correct the evils complained of No. 93 Sixth Street was abandoned Janu-

ary 1, 1913; and that, by reason of the breach of the covenant of quiet and peaceful enjoyment of the leased premises in the particulars specified, these defendants and their successor in interest have been damaged in the sum of $10,000, for which judgment is demanded.

The defendant John Rometsch separately answered, denying the averments of the complaint, and for a further defense alleging in substance that he subscribed his name to the guaranty pursuant to an agreement that another guarantor would also be secured, of which facts the plaintiffs had notice; that, in the absence of any other guarantor, the defendants Eppenstein and Clark, without his knowledge or consent, delivered the writing to the plaintiffs, surrendered the possession of the room to the Keystone Liquor Company, to which corporation the plaintiffs attorned, and also abandoned the premises; and that, by reason of such facts, the plaintiffs ought not to be allowed to allege that he guaranteed the payment of any part of the stipulated rent. The prayer for judgment is that the action be dismissed as to him.

The replies put in issue the allegations of new matter in the several answers, upon which issues the cause was tried without a jury, and, from the testimony received, findings of fact were made according to the averments of the complaint, and to the effect that the averments of the answer of Eppenstein and Clark were wholly unproved; that there was not sufficient evidence adduced to establish the eviction of these tenants; and that the lease was still subsisting, and its terms had not been violated by the plaintiffs. The court further found that the allegations of the answer of Rometsch were not substantiated, and that, prior to the commencement of this suit, the plaintiffs had demanded from the other defendants the sum of

money alleged to be due. As conclusions of law it was determined that plaintiffs were entitled to a recovery of the sums prayed for in the complaint. A judgment having been rendered in accordance therewith, the defendants appeal.    AFFIRMED.

For appellants there was a brief with oral arguments by *Mr. Ed. Mendenhall, Mr. A. S. Dresser* and *Mr. Wilson T. Hume.*

For respondents there was a brief over the names of *Mr. H. K. Sargent, Mr. Alex Sweek, Mr. Seneca Fouts* and *Mr. J. F. Shelton,* with an oral argument by *Mr. Sargent.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. No demurrer to the complaint was interposed, and hence that pleading was not challenged on the ground of misjoinder of parties or of causes of action. Nor was any motion made to require the plaintiffs to elect as to whether they would proceed against the principals or the guarantor. In *Tyler* v. *Trustees of Tualatin Academy,* 14 Or. 485 (13 Pac. 320), it was held that, in a contract of guaranty, the liability of the principal and that of the guarantor was several, and they could not be joined as parties to the same action. In *Bowen* v. *Clarke,* 25 Or. 592 (37 Pac. 74), in a demise under seal P. Basche, one of the persons named in the contract as a lessee, wrote after his name the word "surety." In an action by the landlord against the lessees, it was insisted that the term "surety," as thus employed, made the defendant, who adopted the word of limitation, a guarantor who could not be joined with the other lessees. In deciding that case

Mr. Justice BEAN, referring to the inquiry proposed and to the defendant named, says:

"The principal question presented is whether the defendant P. Basche can be sued jointly with the other defendants, the solution of which depends upon whether his undertaking is original or collateral. If his contract is collateral, and one of guaranty only, his liability and that of his principals is several, and cannot be enforced by a joint action."

Further in the opinion, in adverting to the limiting word so used, it is observed:

"When the undertaking of the surety is not for a direct performance by himself, but only that his principal shall perform, and that he will be bound in case of default, his undertaking is not original, but collateral, and therefore his liability depends upon the terms of his contract, and not upon the character in which he may execute it. Now in this case the lease was executed by all the parties, at the same time, upon the same consideration, and for the same purpose, and the undertaking of the appellant is not made conditional or dependent upon the default of the other defendants, but is an original, unconditional undertaking for a direct performance on his part. It is plain, therefore, within the rule stated, that his contract is not one of guaranty, or an agreement to answer for the debt, default, or miscarriage of another, but that of a joint obligation as to the plaintiff and, as a consequence, may be declared upon as such."

An examination of the writing to which Rometsch subscribed his name, a copy of which is hereinbefore set forth, will show that it is a collateral engagement to answer for the default of the principals, Eppenstein and Clark, upon their failure faithfully to perform the terms of the agreement. If the sufficiency of the complaint herein had been properly challenged on the ground suggested, the action as instituted could

not have been maintained as against Rometsch. Thus in *Virden* v. *Ellsworth,* 15 Ind. 144, a demise was executed by the landlord to Ford, whereupon Virden subscribed his name to an indorsement on the lease as follows: "For value received, I guaranty the payment of the rent, as stipulated by said Ford, in case of non-payment, by him." In an action to recover the rent, Virden was made a party and demurred to the declaration on the grounds of misjoinder of parties and of causes of action. The demurrer was overruled, and, judgment having been rendered as prayed for by the complainant, the action of the lower court was reversed. The Supreme Court holding that the undertaking of the guarantor was distinct from that of the principal and collateral thereto, for which reason there was a misjoinder as stated. To the same effect is the case of *Cross* v. *Ballard,* 46 Vt. 415. It was there insisted that the defendants, Blake and Baker, having joined with the defendant Ballard, the lessee, in all their pleas, were estopped and could not claim that the memorandum at the bottom of the lease to which they subscribed their names, to wit, "For the payment of said contract being fulfilled on the part of said J. N. Ballard, we the undersigned will become responsible," rendered them guarantors. The court, in referring to the memorandum adverted to, said: "This is an independent guaranty, collateral to the principal contract, and does not render Blake and Baker joint contractors with Ballard." A judgment against all of the defendants was reversed as against the guarantors and affirmed as to the principal. In that case it would seem that the declaration did not state facts sufficient to constitute a cause of action as against the guarantors, though the sufficiency of that pleading does not appear to have been challenged in the trial court.

2, 3. Under the statute prescribing the rule of practice in Oregon, a defendant may demur to a complaint when it appears upon the face thereof that there is a defect of parties plaintiff or defendant, or that several causes of action have been improperly united: Section 68, subds. 4 and 5, L. O. L. When any of the matters so enumerated do not thus appear, the objection may be taken by answer: Section 71, L. O. L. If no objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court, and that the complaint does not state facts sufficient to constitute a cause of action: Section 72, L. O. L.

A defect as to parties plaintiff or defendant, as specified in Section 68, subdivision 4, L. O. L., means that the presence of other parties is necessary to a complete determination of the cause. A demurrer interposed on that ground must show that the parties are too few and name those who should be brought in. The clause of the statute last referred to relates to a nonjoinder and not a misjoinder: *Cohen* v. *Ottenheimer,* 13 Or. 220 (10 Pac. 20); *Tieman* v. *Sachs,* 52 Or. 560 (98 Pac. 163); *Powell* v. *Dayton etc. R. R. Co.,* 13 Or. 446 (11 Pac. 222); *State ex rel.* v. *Metschan,* 32 Or. 372 (46 Pac. 791, 53 Pac. 1071, 41 L. R. A. 692). Unless the objection on the ground of a misjoinder is either taken by a demurrer or answer in the court below, the defect is waived: *Osborn* v. *Logus,* 28 Or. 302 (37 Pac. 456, 38 Pac. 190, 42 Pac. 997); *Bohn* v. *Wilson,* 53 Or. 490 (101 Pac. 202); *In re Young's Estate,* 63 Or. 120 (126 Pac. 992).

As the name of Rometsch appeared on the face of the complaint, and by reason thereof a demurrer would not lie, in consequence of there being too many par-

ties, the defect could have been called to the attention of the trial court by an answer, but, the sufficiency of the initiatory pleading not having been challenged in any manner, the defects adverted to were waived.

4. John Rometsch, as a witness, testified that he signed the guaranty pursuant to an agreement with the other parties to this action that another guarantor would also be secured; that, after he had subscribed his name to the writing, the words "we" were changed to "I" without his knowledge or consent. His sworn declarations in these particulars appear inferentially to be corroborated from the circumstance that there was received in evidence a duplicate copy of the lease on which all the names of the parties are appended, and no alterations appear to have been made.

Simon Wolf, as a witness for plaintiffs, testified that he was present when the lease was executed, and, after detailing the conversation relating to the consummation of the contract, he in answer to the inquiry, "Now, when was that 'I' written over the word 'we'?" replied, "That was changed there when Mr. Rometsch put his name at the bottom of this agreement."

The finding of the court is in accordance with the testimony last given in respect to this branch of the case, and, as such conclusions of fact in the trial of an action at law without a jury is predicated upon proper evidence, it is conclusive of the matter: *Williams* v. *Gallick,* 11 Or. 337 (3 Pac. 469); *Liebe* v. *Nicolai,* 30 Or. 364 (48 Pac. 172); *Gorman* v. *McGowan,* 44 Or. 597 (76 Pac. 769), and note. Other findings of fact upon subordinate issues are also supported by testimony, reasonable inferences, and presumptions, thereby rendering such conclusions likewise controlling.

5. The remaining question is whether or not the action of the plaintiffs in respect to the maintenance of alleged nuisances in and about the demised premises authorized Eppenstein and Clark to abandon their contract on the theory that the conduct of their landlords was equivalent to a constructive eviction. The testimony of the lessees, as to the kinds of business conducted by other tenants who occupied parts of the plaintiffs' building and the bad reputation of such places, whereby the expectations of these defendants to secure a successful trade were thwarted, fully support the averments of their answer. Their sworn declarations and those of their witnesses in these particulars were not controverted by any testimony given by or on behalf of the plaintiffs. It is believed that the findings of fact in substance that the averments of the answer with respect to the matters now under consideration were wholly unproven should be regarded rather as a conclusion of law and to the effect that the testimony given by the defendants' witnesses was insufficient to justify an abandonment of the leased premises on the ground of a constructive eviction.

6. No changes were made in the occupation of any part of the building or in the business pursuits of any of the other tenants after Eppenstein and Clark entered the premises under their lease; and, such being the case, are the plaintiffs responsible for the conduct of other tenants or the bad reputation of their places of business when no testimony was given to show that any part of the building was leased for immoral purposes or that the plaintiffs consented to or connived at the transaction of any performance involving moral turpitude? Unless otherwise expressly stipulated, the landlord, by devising real property, impliedly covenants that the tenant shall not be dis-

turbed in the possession and quiet enjoyment of the premises during the continuance of the term: Tyler's Landlord and Tenant (9 ed.), § 304. This author in the following section says:

"This covenant, whether expressed or implied, means that the tenant shall not be evicted or disturbed by the lessor, or by persons deriving title from him, or by virtue of a title paramount to his, and implies no warranty against the acts of strangers."

7. When a tenant is deprived of the enjoyment of demised premises by the immoral act of the landlord, such conduct on the part of the lessor is equivalent to an eviction, authorizing the lessee to vacate the real property, and constituting a valid defense to an action against him for the recovery of any rent subsequently accruing: *Dyett* v. *Pendleton,* 8 Cow. (N. Y.) 727. In that case apartments in a building having been leased and possession thereof taken by the lessee, the landlord thereafter, brought into another room, under the same roof, lewd women whose noise and disturbance at night caused the lessee and his family to vacate the demised premises; and it was held that the evidence of the moral turpitude was sufficient to be submitted to the jury under a plea of eviction by the landlord in an answer to a declaration for rent, and that, based upon such evidence, the jury might find the plea was true whereby the lessor would be debarred from his rent, the same as an actual and physical entry by the latter and the expulsion of the tenant. The rule thus adopted has in some instances been declared to constitute an "extreme case," and the legal principle so announced has been modified by some courts. It is difficult to assign a reasonable ground for overturning or modifying in any manner that decision, the

justice of which would seem to commend it to all virtuous persons.

8. The rule to be extracted from the principal case would seem to be that when a landlord demises a room for a laudable purpose, and thereafter leases another room in the same building, and the business conducted in the latter apartment so disturbs the use and occupation of the tenant of the other room as to render it practically unavailable for the purpose for which it was leased, he may, in consequence of a breach of the implied covenant of quiet enjoyment, vacate the premises, and his abandonment will be construed to be a constructive eviction, relieving him from the obligation thereafter to pay rent, and also entitling him to damages sustained by reason of such infraction of the agreement: *Halligan* v. *Wade,* 21 Ill. 470 (74 Am. Dec. 108); *Wade* v. *Herndl,* 127 Wis. 544, 107 N. W. 4, 7 Ann. Cas. 591, 5 L. R. A. (N. S.) 855; *Lay* v. *Bennett,* 4 Colo. App. 252 (35 Pac. 748); *Milheim* v. *Baxter,* 46 Colo. 155 (103 Pac. 376, 133 Am. St. Rep. 50); *Duff* v. *Hart* (Com. Pl.), 16 N. Y. Supp. 163. In an action for the recovery of rent, if it appears that the tenant moved from the demised premises because a house of ill fame is conducted in a part of the same building, he must, in order to escape the payment of rent, in an action for the recovery thereof, show that the landlord created the nuisance by leasing a part of the premises for immoral purposes, or that such practice existed by his connivance and with his consent: *Cougle* v. *Densmore,* 57 Ill. App. 591; *Gilhooley* v. *Washington,* 4 N. Y. 217; *Townsend* v. *Gilsey,* 1 Sweeny (N. Y.), 155.

The evidence in the case at bar does not show that plaintiffs leased the other rooms in their building for illegal purposes, or that any business involving moral

turpitude was conducted therein with their connivance or consent.

Such being the case, the conclusion reached by the trial court, and the judgment based thereon should be affirmed; and it is so ordered.            AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE RAMSEY concur.