Argued February 18; affirmed in part April 14, 1931

## PORTER CONSTRUCTION CO. *v.* BERRY ET AL.
### (298 P. 179)

*Harry D. Boivin,* of Klamath Falls . (Wilson S. Wiley, of Klamath Falls, on the brief), for appellants.

*Arthur W. Schaupp,* of Klamath Falls, for respondent.

ROSSMAN, J. The first assignment of error is predicated upon the contention that the circuit court erred when it overruled defendant Berry's demurrer to the complaint which challenged that pleading in the two following particulars: (1) an alleged failure of it to state facts sufficient to constitute a cause of action; (2) an alleged "defect of parties defendant."

In support of the first of these two contentions Berry argues that all services rendered subsequent to the making of a contract of employment are presumed to be rendered at the contract price in the absence of evidence to the contrary, and that there can be no

implied contract where there is an express contract between the parties in reference to the subject-matter. We are willing to subscribe to this principle of the law of contracts but fail to perceive how its application to the averments which allege the excavations made below street level would be warranted. The complaint alleges that the contract, which the parties effected, bound the plaintiff "to excavate to the Main street level" only, and that "it was agreed that the excavation should not extend below the level of the street." Further the complaint alleges that while the plaintiff was engaged in the performance of that contract the "defendants changed their plans for the construction of the building" in such a manner that "some deep excavation, below the level of the street," was required, the exact nature of which had not yet been determined. The complaint continues:

"When plaintiff was informed that it would be necessary to excavate below street level, he informed defendants that such excavation could not be performed for fifty cents ($.50) per cubic yard, under his original contract, and defendants N. E. Berry and J. P. Duke informed and instructed plaintiff to proceed with such excavation and the said defendants promised and agreed to compensate plaintiff for such additional work and labor."

These allegations conclude with an averment of the alleged reasonable cost of excavating all materials removed from below the street level lines at both building sites. Such being the complaint we cannot presume that when the plaintiff proceeded to remove the additional 5,922 cubic yards from below street level he did so under the contract which required the removal of above street level materials only at the price of fifty cents per cubic yard. The above allegations warrant

no conclusion that the parties amended their contract by including the below street level quantities at the price of the above street level work, but rather charge that plaintiff and defendants effected a second contract covering the subject-matter of below street level excavations. This new or second contract required the plaintiff to perform an additional amount of work of an undetermined quantity, and likewise failed to specify the precise compensation payable to the plaintiff. The complaint alleges that the new agreement was preceded by a declaration that the plaintiff could not render the additional service for fifty cents per cubic yard, and that the defendants agreed to pay "for such additional work and labor"; that is the reasonable value of the same. The latter allegation does not appear in the words just employed by us, but had that phraseology been used in the complaint it would have constituted nothing more than the averment of a conclusion of law. The complaint alleged, however, the reasonable value of all services performed under the second contract. Such being the averments the objections upon which the first contention of the demurrer was predicated are untenable.

In support of the second contention upon which Berry's demurrer was predicated, that is an alleged defect of parties defendant, Berry argues "the principal, N. E. Berry, is joined as one of the defendants. * * * J. P. Duke was acting only as agent for N. E. Berry and within the authority of his representative capacity." None of those supposed facts appear upon the face of the complaint and since speaking demurrers are unknown to our practice we must ignore them. Being ignored the complaint is predicated upon the theory that all three defendants, as joint contractors, made the promises alleged in the complaint, and hence

would be jointly liable. Such being the averment no defect of parties is apparent. Berry seems to believe that the "defect of parties, plaintiff or defendant" mentioned in § 1-605, Oregon Code 1930, means too many. It means too few: *State ex rel. v. Hawk,* 105 Or. 319 (208 P. 709, 209 P. 607); *Wolf v. Eppenstein,* 71 Or. 1 (140 P. 751); *Tieman v. Sachs,* 52 Or. 560 (98 P. 163).

■ The next assignment of error is based upon the contention that the circuit court erred when it overruled the motion of the defendant J. P. Duke for a nonsuit. As we have seen the complaint avers that he, together with the other two defendants, engaged the plaintiff's services and agreed jointly with them to pay therefor; its averments charge an express contract in parol. In order to sustain its recovery the plaintiff relies upon evidence which shows that Duke, who was the president of the Oregon Bank & Trust Company (a defendant), directed the course of operations during the excavating work whenever his advice was sought, and the testimony of Mr. L. R. Porter, president of plaintiff corporation, the essential features of which we shall now quote. Porter testified that Duke "asked me to give a figure on excavating the property," and that both Duke and Berry were present when he submitted his bid. We quote again from his testimony: "I was taking my orders from Mr. Duke," and "It was my impression that Mr. Berry and Mr. Duke were building these buildings and that their operations were together;" referring to Mr. Duke he testified: "He left the impression with me that he and Mr. Berry were doing this job together. Q. You thought you were dealing with him as an owner, then, of that property? A. Yes, I did." To another question he replied: "As far as I knew they were building that jointly, together, with their asso-

ciates—whoever they were I don't know; but Mr. Berry and Mr. Duke, as far as I know, were in partners on that situation.'' The testimony we shall now quote is taken principally from statements made by Porter on cross-examination. Referring to the agreement alleged in the complaint Porter was asked:

''Q. Did Mr. Duke make that proposition to you? Did he tell you he would pay you fifty cents per cubic yard to excavate any material at 9th or 10th and Main?

''A. Yes, he did.

''Q. Did he make that proposition to you as an individual or as an officer of the bank?

'' A. As the representative of Mr. Berry, I assume.

''Q. Alright, that is a little different. Did you understand that Mr. Duke represented Mr. Berry when this proposition of fifty cents per cubic yard was made to you to excavate this material?

''A. I understand he was his agent.''

When asked to whom he ''looked'' for payment he replied: ''I was looking to Mr. Berry as I presumed he was the owner of the building.'' To the inquiry—''Did you ever 'bill him' (Duke) individually for any services you rendered him''—he replied: ''No sir.'' The plaintiff sent Berry, who resided in Seattle, a telegram which contained the following statements: ''You have not had representative here to make adjustment for extra depth stop We have been working under local orders stop * * * Have taken matter up with Duke a number of times about conditions at Tenth street side which at present very dangerous * * * He has instructed us * * * Please confirm.'' Concerning this telegram Porter was asked: ''Why did you ask—wire to Mr. Berry there is in that telegram, marked plaintiff's exhibit I, to the effect that he had no representative here in Klamath county to give you instructions? A. Simply because I had gone to Mr.

Duke a great many times about the job over there and he did not know much about the conditions of it: Mr. Field was not there. Mr. Duke did not know anything about the construction, and I was taking my orders from him, and I took them from Mr. Berry and Mr. Field, and I do not know whom. Q. Is it a fact, Mr. Porter, that you really looked to Mr. Berry for doing this work? A. I was looking to Mr. Berry, as I presumed he was the owner of the building.'' At another time Porter was asked: ''Did Mr. Berry ever tell you to take your orders from Mr. Duke?'' He replied: ''Yes, he said to look to him for my money and if anything was wrong to take it up with him.'' The last testimony given by Porter on this subject follows:

''You have already testified that Mr. Duke was just acting as a representative of Mr. Berry's here, have you not?

''A. Yes.

''Q. Why should you depend on Mr. Duke to determine whether or not you would get paid for all of that extra work. Why did you not go to Mr. Berry?

''A. Because Mr. Berry was here. When Mr. Berry left he told me 'My representative, Jack, he will be here to take care of it'.''

Duke testified that he had no personal interest in either the property or the construction of the building and that he made no engagements with the plaintiff in his individual capacity of any character. Berry resided in Seattle, Washington, and was the owner of the property upon which the building was to be constructed. The Oregon Bank & Trust Company, of which Duke was president, had an agreement whereby it would secure quarters in the new building. Berry and Duke were acquainted with one another and during

the times when Berry was absent from Klamath Falls Duke acted as his representative in supervising the excavating operations.

■ The question now occurs whether the above testimony is capable of sustaining a judgment against Duke for the cost of making the excavation. As previously noticed the complaint is based upon the theory that the three defendants jointly promised to pay for the excavation work at the rate of fifty cents per cubic yard for all materials taken from above street level and at the rate of reasonable remuneration for the balance. It is clear from Porter's testimony that Duke made no such promise in his individual capacity. It is true that he requested the plaintiff to submit a bid but Porter testified that when the minds of the parties met Duke was acting ''as the representative of Mr. Berry, I assume, * * * I understand he was his agent. * * * I was looking to Mr. Berry.'' And it was to Berry and not to Duke, that the plaintiff sent its bills. When Porter entertained a doubt upon a matter of consequence his company sent a telegram to Berry requesting confirmation of Duke's instructions before executing them. Although Porter's conclusions and ''impressions'' were freely received in evidence he nowhere testified that Duke had rendered himself personally liable, nor that the latter was a party to the contract. The agent who acts within the scope of his authority, discloses his representative capacity to the third party, and makes the contract in his principal's name, is not personally liable thereon. His non-liability, as has been often pointed out, is due to the fact that he does not promise that his principal will pay for the work, nor does he guarantee the honesty, solvency and good faith of the principal. Meecham on Agency

(2d Ed.), § 1357. Since we have arrived at the conclusion that the evidence wholly fails to show that Duke made any promises in his individual capacity, it follows that he is not liable upon the contract alleged in the complaint.

■■ The plaintiff, however, seems to believe that because Porter testified "It was my impression that Mr. Berry and Mr. Duke were building these buildings" and added "He left the impression with me that he and Mr. Berry were doing this job together," Duke somehow rendered himself liable to pay for the cost of the excavation. It will be observed, however, that at other times he described Berry as the owner of the building. But even if Duke, who was a nonowner, "left the impression" that he was interested in the construction of the building we know of no principle of law which would warrant a recovery against him in the absence of a promise upon his part to pay for the work or some fraudulent conduct which misled the plaintiff. The doctrine of quasi contracts is based upon the principle that a party who has received a benefit, which he desired, under circumstances which render it inequitable for him to retain it without making compensation must do so: Woodward, the Law of Quasi Contracts, p. 19; Keener on Quasi Contracts, p. 19. But in the present instance Duke received no benefit whatever from the plaintiff. The circuit court erred when it failed to sustain his motion.

■■ The next assignment of error is predicated upon the contention that the circuit court erred when it overruled the motion of the defendant, Oregon Bank & Trust Company, for a nonsuit. Porter, president of the plaintiff corporation, was asked: "Did he make that proposition to you as an individual or as an officer of the bank." "The proposition" to which the inquiry

referred was the alleged contract mentioned in the complaint. The witness replied: ''As a representative of Mr. Berry I assume.'' No evidence of any kind had a tendency, even remotely, to indicate that the bank had covenanted with the plaintiff. Both Duke and the vice president of the bank denied that it had ever contracted with the plaintiff, and both swore that the bank had no interest in the proposed building except the one arising from an agreement with Berry for space in the structure. Berry and the architect, who designed the building, testified to the same effect. Since the plaintiff failed to produce any testimony whatever that any one acting on behalf of the bank bound it to the contract alleged in the complaint, the cause of action recited in that pleading, which is predicated upon an express contract failed. But the plaintiff argues that it supplied evidence which indicated that the bank owned the land at 10th and Main streets and submits that hence it ought to pay for the plaintiff's work. The uncontradicted testimony showed that several months prior to the excavating operations the bank had subscribed to a contract to purchase a small portion of the property upon which the plaintiff performed its work from the Central Development Company, which previously had agreed to buy the same and other property from the Klamath Falls school district, but, two or three months prior to the excavating operations the bank had agreed to assign its contract of purchase to Berry, and that agreement was in effect during the time that the plaintiff was excavating the land. Before the building was completed the contracts of purchase were performed and Berry acquired title. Before the contract for excavating the land was effected Berry had purchased from the Central Develop-

ment Company all of the other land upon which the plaintiff performed its work. Thus it is evident that many weeks before the plaintiff commenced its work the bank had parted with its interest in the land. Such being the fact the law of quasi contracts can not be invoked to creat an implied promise upon the part of the bank to pay for the benefit conferred upon the land. See the authorities previously cited. Moreover, the bank's contract of purchase covered only a small portion of the property at 10th and Main streets. The plaintiff's evidence did not segregate the materials removed from this small portion from that taken from the entire body of land, and the jury had no means of doing so. The hole which the plaintiff dug was irregular in size and depth. A segregation would be difficult. A recovery can not be based upon mere guess work and when compensatory damages are susceptible of proof with approximate accuracy the necessary evidence must be supplied: 17 C. J., Damages, § 90, p. 758. We are of the opinion that the motion of the bank for a nonsuit should have been allowed.

The next assignment of error charges that the circuit court erred when it overruled the defendant's objection to a question which permitted Porter to testify to the quantity of material excavated at 9th and Pine streets. Berry's answer alleged that he and the plaintiff agreed that

"C. C. Kelly, a professional civil engineer, or one of his assistants should * * * determine the quantities of excavated material moved, or to be moved by plaintiff and for the said quantities of excavated material so determined by said C. C. Kelly, or his assistant, removed or excavated by plaintiff, the defendant N. E. Berry would pay to the plaintiff compensation at the rate of 50 cents per cubic yard."

The reply denied this allegation. Since the plaintiff's contention that it had never submitted itself to any agreement which bound it to acquiesce in Kelly's computations was substantiated with proof, it was free to offer any competent evidence of the amount of excavated materials. However, since the parties agreed during the course of the closing arguments upon the quantities excavated both above and below street level the challenged ruling is devoid of all practical consequence.

The next assignment of error is thus expressed by the appellant: "The court erred in overruling the defendants' objection to the testimony of Louis K. Porter, witness for the Porter Construction Company, tending to prove the cost of excavation work below street grade without taking into account sums of money received by the Porter Construction Company in connection with the sale and disposal to third parties of any of the material so moved." An examination of the evidence readily discloses that this objection is without merit. Porter, in the narration of his testimony, disclosed fully the quantities of waste material he had sold, the name of the purchaser, the price received, and the cost of disposal. In its argument the defendants' brief departs from its above objections, and contends that it did not receive credit for the value of the removed soil. All parties are agreed that the plaintiff rightfully sold all waste material, for which a buyer was available, and that Berry was entitled to a credit for the value of the same. Hence, even the enlarged objection presents no issue of law. But it, too, is disposed of by an examination of the evidence. The latter discloses that the plaintiff's bid was reduced to 50 cents a yard only after the plaintiff had

assured itself that it could sell the waste material. Of this fact Berry had full information before he accepted plaintiff's proposal. The evidence also discloses that for the balance of the material the plaintiff obtained various prices, and was confronted with so many difficulties in hauling to the desired locations and spreading the soil, under the supervision of the buyer, that instead of making a profit it sustained a loss. If this evidence was true Berry was entitled to no credit. If it was not true it should have been rebutted in the circuit court. But since it was not contradicted the assignment of error is devoid of merit.

 The next assignment of error contends that the circuit court erred when it overruled the defendants' objections which challenged the competency of four of plaintiff's witnesses to state their opinions upon the reasonable value of making the below grade excavations. One of these four witnesses had been engaged in the construction business for 34 years, including several years excavation experience in the city of Klamath Falls. Another of these witnesses was the incumbent of the office of city engineer of Klamath Falls; another was a trained civil engineer in the employ of the Southern Pacific Company, whose duties required him to carefully compute the cost of power shovel excavations, and the fourth who had been engaged for 10 years in the construction business was now in the plaintiff's employ and was personally familiar with this particular job. Defendants' objection clearly discloses no abuse of the discretion reposed in the trial court to determine whether a proposed witness possesses adequate qualifications to render his opinion valuable and therefore admissible: *Goldfoot v. Lofgren,* 135 Or. 533 (296 P. 843), and *Pennebaker v.*

*Kimble,* 126 Or. 317 (269 P. 981). By a process of accretion this simple objection, that the witnesses lacked the competency of experts, somehow expanded itself upon its journey to the supreme court until defendants' counsel felt themselves justified in using it as a premise for the argument that the estimates of these witnesses usurped the functions of the jury. This is a court of review, we reiterate, and unless an objection to a piece of proffered evidence was voiced in the circuit court we must decline to consider it here: *Michelin Tire Co. v. Williams,* 135 Or. 158 (293 P. 938). But it follows from the reasoning employed by us recently in the case of *Goldfoot v. Lofgren,* supra, that this objection would not meet with our approval even if it were properly before us.

■ Finally the appellants argue that the trial judge erred when he failed to subscribe to the following instruction requested by the defendants:

"You are instructed that if you find from the evidence, and which fact is admitted in the complaint of the plaintiff, that there was a contract for removing surface material to street grade only, at the rate of 50 cents per cubic yard, in determining the reasonable value of the work and labor for excavating below street grade, you will take into account the cost for doing said work and deduct therefrom any sum of money received by plaintiff from third parties for the sale of the excavated material as a reduction of plaintiff's costs."

It is of course elementary that misleading instructions should never be given. Although we have studied the above proposed instruction with care we have not been able to determine its meaning. We can not understand why "the reasonable value" of the work of excavating below street grade should be dependent

upon the determination of the issue whether the plaintiff had a contract to excavate above street level at a price of 50 cents per cubic yard. Next the proposed instruction states: "You will take into account the cost of doing said work." What work? Above grade, or below grade? If not the former, why was mention of it preceded with the caution: "If you find from the evidence" that the plaintiff had a contract to do it for 50 cents a yard? Clearly the cost of surface excavations would not be a fair standard to determine the cost of another excavation which extended a score or more feet below street level where severe difficulties were encountered due to the presence of a live spring, quantities of soapstone and chalkstone. Next the requested instruction required the juror to "deduct * * * any sum of money received by plaintiff for the sale of excavated material." Yet the uncontradicted, itemized evidence showed that before the plaintiff could receive anything for excavated material it was necessary to haul it to difficult places and spread it under the directions of the buyer in such expensive manners that a loss was sustained by the plaintiff. It is evident that the court properly declined to read to the jury this requested instruction.

Several other matters are argued in appellants' brief, but since they were not presented to the circuit court for its disposition we decline to consider them. Berry seems to believe that the jury's determination of the issues was erroneous. He argues that the agreement of the parties fixed 50 cents per yard as the price of all the work which the plaintiff performed, and that the jury's award was too liberal. Possibly if the members of the court had been the jurors the verdict would have been more pleasing to Berry, but the con-

stitution of this state (Oregon Code 1930, p. 131) provides: "No fact tried by a jury shall be otherwise reexamined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Since the jury's verdict is substantiated by substantial, competent evidence we are precluded from molesting it.

It follows from the foregoing that the judgment of the circuit court, as to appellant Berry, will be affirmed, but an order of nonsuit should be entered in favor of appellants J. P. Duke and The Oregon Bank & Trust Company.

BEAN, C. J., RAND and KELLY, JJ., concur.